IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID AND DIAN KROGULL, | ) | |
| | ) | |
| Plaintiffs, | ) | No.   08 C 643 |
| | ) | |
| v. | ) | Judge Andersen |
| | ) | |
| TRIUMPH CREDIT, LLC, SYNCOM AND | ) | Magistrate Judge Cox |
| FORD MOTOR CREDIT COMPANY, | ) | |
| | ) | |
| Defendants | ) | |

FORD MOTOR CREDIT COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
COUNTS III, IV AND V OF PLAINTIFFS' COMPLAINT

Ford Motor Credit Company, ("Ford Credit"), by its undersigned attorney, states as its

memorandum of law in support of its motion to dismiss Counts III, IV and V of the Plaintiffs'

Complaint as follows:

Introduction

Count I of Plaintiffs' Complaint is directed to Syncom, and is not the subject of this

motion to dismiss.  Count II of Plaintiffs' Complaint is a claim against Ford Credit under the

Illinois Consumer Fraud and Deceptive Practices Act, (the "Act"), 815 ILCS 505/2, *et seq.*.  It is

also not the subject of this motion to dismiss.

Count III is a claim against Ford Credit alleging common law fraud.  Count IV is a claim

against Ford Credit for slander of credit.  Count V is a claim against Ford Credit and Triumph

Credit LLC, ("Triumph") alleging a civil conspiracy.  The allegations in Counts III, IV and V

against Ford Credit fail to state a claim for which relief can be granted.  Furthermore, a dismissal

is appropriate because the Plaintiffs cannot present any facts which would state a claim against

Ford Credit.  The test to be applied on a motion to dismiss for failure to state a claim is whether

it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Vickery v. Jones, S.D.Ill.1994, 856 F.Supp. 1313, affirmed 100 F.3d 1334, certiorari denied 117 S.Ct. 1553, 520 U.S. 1197, 137 L.Ed.2d 701

<u>Argument</u>

I.    Plaintiffs' Complaint Fails To State A Claim For Common Law Fraud Against Ford Credit

Count III of David and Dian Krogull's, (the "Krogulls"), Complaint alleges common law fraud against Ford Credit.  The essence of the Krogulls' claim against Ford Credit is contained in paragraphs 24 and 27 of Count II.  A copy of the Complaint, without exhibits, is attached hereto as Exhibit A and made a part hereof.  The Krogulls claim that Ford Credit made a false representation to Midland Funding LLC[1] and Triumph; that the debt owed to Ford Credit evidenced by the contract sold to Triumph was collectable.  See Exhibit A, para 24 and 27. Count III incorporates all of the previous paragraphs of the Complaint and then states five paragraphs of conclusions of law: That the misrepresentations and failures to disclose were made with the intent that the Krogulls rely on them and that the Krogulls did justifiably rely to their detriment; The Krogulls suffered damages; Ford Credit's conduct constitutes fraud and Ford Credit's conduct was willful and intentional or in reckless disregard for the truth or falsity of the misrepresentations and/or failures to disclose. Finally the Complaint alleges that the Krogulls

---

[1]Midland Credit Management is a defendant in another case brought by the same attorneys representing the Krogulls.  This Complaint contains several references to the defendants in that case as well as the plaintiff, William Gros.  For the purposes of this motion to dismiss, Ford Credit will assume that when Midland Funding or Midland Credit Management is mentioned, it is a reference to either Triumph or Syncom.  Likewise, a mention of Gros shall be assumed to be a mention of the Krogulls.

discovered that Ford Credit had committed these acts of fraud when the Krogulls were sued by Triumph in August, 2006.  See Exhibit A, para. 35 - 39.  Without even discussing whether such conclusions of law can be sufficient to state a cause of action for common law fraud, it is obvious that the statements are not true.

In order to state a valid cause of action for common law fraud a plaintiff must be able to show  (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance on the statement; and (5) the plaintiff's damages resulting from reliance on the statement. Suburban I, Inc. v. GHS Mortgage, LLC, 358 Ill.App.3d 769, 833 N.E.2d 18, 21, (2nd Dist. 2005).

In the Suburban case the court found that the plaintiff had failed to establish the third or fourth elements of common law fraud.  The Plaintiffs' complaint, like The Krogulls' Complaint, made only conclusory allegations that the statements were made with the intent that the plaintiff rely and that the plaintiff relied on the statements to its detriment.  Suburban at 833 N.E.2d 22.

The Krogulls' Complaint is defective not only because of its conclusory statements but in another, more important aspect.  As stated above, one of the elements of common law fraud is reliance by the plaintiff on the alleged bad acts of the defendant.  The Krogulls have admitted and affirmatively stated that they never relied on the statements or failures to disclose by Ford Credit.  See Exhibit A, para. 12 and 13.  Therefore, the allegations in paragraphs 35 and 36 are not only conclusory, they are untrue. The Krogulls never relied on any statement or omission and there can be no damages due to reliance.

The Krogulls' Complaint is the second time that these obviously false pleadings have

3

been made.  As stated above, the Krogulls' Complaint is a copy of another complaint filed by the same attorneys styled <u>William Gros v. Midland Credit Management and Ford Motor Credit Company</u>, 06 C 5510, (the "Gros Case").  The same allegations were made in the Gros Case.  In that case, Judge Holderman granted Ford Credit's motion to dismiss the common law fraud claim, with prejudice.  A copy of Judge Holderman's Memorandum Opinion and Order is attached hereto as Exhibit B and made a part hereof.

Count III of Plaintiffs' Complaint must be dismissed with prejudice.

II.    Plaintiffs' Complaint Fails To State A Claim For Common Law Slander of Credit By Ford Credit

In Count IV of their  Complaint, the Krogulls attempt to make a claim against Ford Credit for common law slander of credit. Their efforts fall short and the claim must be dismissed.

The Krogulls claim that Ford Credit slandered their credit by reporting to Triumph that the Krogulls were indebted to it.  <u>See</u> Exhibit A, para 41 and 42.  Ford Credit could argue that such claims are preempted by 15 U.S.C. §1681h(e) but for the conclusory allegations of malice and willful intent.  <u>Dornhecker v. Ameritech</u>, 99 F.Supp.2d 918, 932, (N.D.Ill. 2000).  The Krogulls' Complaint still fails to state a cause of action for common law slander because it fails to set forth any special damages.

The <u>Dornhecker</u> case involved several plaintiffs who claimed that Ameritech had furnished false information to credit bureaus and collection agents, among other claims.  The court first denied Ameritech's motion to dismiss on the grounds of federal preemption.  <u>Id.</u>  The court then reviewed the state law claims of common law defamation.  The court explained that the claims against Ameritech were for *per quod* defamation because the defamatory nature of the statement was not apparent on its face.  <u>Dornhecker</u> at 933.  Citing Illinois law, the court ruled

4

that in a *per quod* defamation action, the plaintiff must plead and prove special damages.  Id.

The plaintiffs claimed that they incurred special damages because the reports impaired plaintiffs'

creditworthiness and prevented them from obtaining credit.  The court ruled that such general

allegations were not sufficient because the plaintiff did not allege any facts to support his claims.

The plaintiff must not only plead the basic elements of a *per quod* claim, he must set forth

extrinsic facts to support the claim.  Id.  It is an exception to the general notice pleading

requirements.

    The Krogulls have not stated any extrinsic facts which would support their claim for *per

quod* defamation.  Like the plaintiffs in Dornhecker and the plaintiff in the Gros Case, the

Krogulls merely state that they have suffered actual damages in that their credit has been

damaged and that they have suffered aggravation and distress.  See Exhibit A, para. 45. They fail

to support these claims with specific information about the alleged damage to credit or what

actual damages they have suffered as a consequence.  This is the same defect found by Judge

Holderman in the Gros Case.  See Exhibit B.

    Count IV of Plaintiffs' Complaint must be dismissed because it fails to allege an essential

element of a cause of action for slander of credit.

IV.    Plaintiffs' Complaint Fails To State A Cause Of Action For Civil Conspiracy

    Count V of the Complaint is labeled a claim of civil conspiracy against both Triumph and

Ford Credit.  It is, in fact, merely a reiteration of the previous claims made and fails to make any

claim for conspiracy against Triumph and Ford Credit.

    In Count V, Plaintiffs claim that Triumph and Ford Credit acted willfully and

intentionally, in combination with or in concert with each other in an attempt to collect an

5

unlawful debt from Plaintiffs, that the conspiracy violated the Illinois Consumer Fraud Act, 815

ILCS 505/2, that they participated in a scheme, that the conduct resulted in damages to the

Plaintiffs and that the conduct was a continuous pattern of conduct.  See Count V, para 47 - 53.

Other than the primary allegation that Triumph purchased the Krogulls' debt from Ford Credit,

there is no other evidence contained in Count V that supports any allegation of a conspiracy.  The

allegations set forth above are all conclusory and unsupported by any allegations of fact.

Count V of the Amended Complaint filed in the Gros Case contains nearly identical

allegations of a civil conspiracy between Ford Credit and Midland Credit Management,

("MCM").  Judge Holderman granted Ford Credit's motion to dismiss Count V with prejudice

stating:

> To state a claim for civil conspiracy under Illinois law, a plaintiff
> must allege (1) an agreement for the purposes of accomplishing
> either an unlawful purpose or a lawful purpose by unlawful means;
> and (2) at least one tortious act committed by one of the
> co-conspirators in furtherance of the agreement. *McClure v. Owens
> Corning Fiberglas Corp.,* 720 N.E.2d 242, 258 (Ill. 1999).
>
> * * *
>
> However, relief may be denied and a claim dismissed if a plaintiff
> has plead himself out of court, such that "it would be necessary to
> contradict the complaint in order to prevail on the merits" of the
> asserted claim. *Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 715
> (7th Cir. 2006). That is the case here. Civil conspiracy requires an
> agreement "for the purposes of accomplishing either an unlawful
> purpose or a lawful purpose by unlawful means." *McClure,* 720
> N.E.2d at 258. As noted above, Gros does not allege that MCM
> knew that the debt it sought to collect was not actually owed by
> Gros. In fact, Gros alleges that Ford Credit (1) falsely represented
> to Midland Funding, LLC that Gros was in debt to Ford Credit, and
> (2) fraudulently concealed the Circuit Court's ruling from Midland
> Funding, LLC. (Am. Compl.¶¶ 24, 27(C)). "Civil conspiracy is an
> intentional tort and requires proof that a defendant 'knowingly and
> voluntarily participates in a common scheme to commit an

> unlawful act or a lawful act in an unlawful manner.'" *McClure,* 720
> N.E.2d at 258 (citing *Adcock v. Brakegate, Ltd.,* 645 N.E.2d 888
> (1994)). According to the factual allegations of Gros' Amended
> Complaint, MCM could not have knowingly participated in a
> scheme to collect an unlawful debt, as the debt's unlawful nature
> was hidden from MCM. Count V is thus dismissed with prejudice
> for failure to state a claim for civil conspiracy under Illinois law.

<u>See</u> Exhibit B.

The only difference between the defective pleading in the Gros Case and the pleading in

this case is the name of the alleged co-conspirator; even the paragraph numbers remain the same.

And the result must also remain the same; Count V of the Krogulls' Complaint should be

dismissed with prejudice.

<u>Conclusion</u>

The Krogulls have failed to state claims for which relief can be granted against Ford

Credit.   The Krogulls' claim for common law fraud is fatally flawed and can not be resurrected

by amendment.  They have admitted that they did not rely on any action or inaction by Ford

Credit.  Reliance is a critical element of a cause of action for common law fraud.

The Krogulls might be able to state a claim for slander of credit if they are able to state

extrinsic facts to support their claim.  They would need to meet the pleading requirement set

forth in the cited case law.  The Krogulls would also need to explain what special damages they

have incurred, if any.  The Complaint does not meet the minimum standards to state a cause of

action for defamation of credit and should be dismissed.

In Count V, the Krogulls have failed to show any conspiracy and also failed to show any

damages.

For the reasons set forth above, Ford Credit prays for the entry of an order dismissing

7

Counts III and V of plaintiff's Complaint with prejudice and an order dismissing Count IV without prejudice but with directions that the claim be properly plead and for such further and additional relief as this Court deems right and just.

FORD MOTOR CREDIT COMPANY


_____/s/ Mary K. Schulz_____
One of its attorneys

Mary K. Schulz, 6183773
Schulz Law, P.C.
35 E Wacker Drive, Suite 650
Chicago, IL 60601
312.546-5146

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| David & Dian Krogull | ) |
|     Plaintiff | ) |
| | ) **08CV 643** |
| vs. | ) **JUDGE ANDERSEN** |
| | ) **MAGISTRATE JUDGE COX** |
| Triumph Credit, LLC, | ) |
| Syncom, and | ) |
| Ford Motor Credit Company, | ) |
|     Defendant | ) JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATIONS OF THE
### FAIR DEBT COLLECTION PRACTICES ACT AND OTHER CLAIMS

Now come the Plaintiffs, David & Dian Krogull, by their attorneys, Norman H. Lehrer, P.C., and file their Complaint against Defendants, and state and allege as follows:

### INTRODUCTION

1.      Plaintiffs David Krogull and Dian Krogull bring this action against Defendants for violation of the Fair Debt Collection Practices Act, Illinois Consumer Fraud Act, and other claims as the Defendants have pursued collection against the Krogulls on a false debt after the debt was released by Ford Motor Credit Complaint, and the Defendants engaged in unfair debt collection practices by misrepresenting the debt and itself Plaintiffs bring this action against Ford Motor Credit Company based on the Defendant's false misrepresentation that they are indebted to the Defendants and for fraudulent initiation of a lawsuit and slander of credit and other claims.

### JURISDICTION AND VENUE

2.      The jurisdiction of the United States District Court is based on 28 U.S.C. 1331 (Federal Question Jurisdiction) and 15 U.S.C. 1692 (Fair Debt Collection Practices Act), and there is a common nucleus of facts between the federal question claims arising

1

under the Federal Fair Debt Collection Practices Act and the pendent state actions for common law fraud, consumer fraud, civil conspiracy and slander of credit. This Court has supplemental jurisdiction over the state claims under 28 U.S.C. 1367.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this District.

4.      Venue is also proper in this District since the Defendants can be found, have agents, or transact business in this District.

## PARTIES

5.      David Krogull and Dian Krogull are citizens of the State of Illinois and of the United States who reside within this District. Gros was previously a party to an action in the Circuit Court of DuPage County entitled *Krogull v. Ford Motor Credit Company*, Case No. 01 L 7291.

6.      The Krogulls are "consumers" as that term is defied by by Section 1692(a)(3) of the Fair Debt Collection Practices Act (hereafter "FDCPA") in that the alleged debt that Defendants sought to collect from them is a consumer debt, purportedly owed to Ford Motor Credit Company.

7.      Upon information and belief, Defendant Triumph Credit, LLC d/b/a Triumph and Syncom have their principal place of business located in Houston, Texas.

8.      Upon information and belief, Triumph and Syncom are both corporations regularly engaged in the collection of debts allegedly owed by consumers, and does so for profit.

2

9.    Upon information and belief, Defendant Syncom is a Texas corporation which regularly engaged in the collection of debts owed by consumers and does so for profit.

10.    Syncom and Triumph Assert Services d/b/a Triumph Credit, LLC, are debt collectors as defined by Section 1692(a)(6) of the FDCPA. Syncom contacted the Krogulls by letter at their home in Westmont by mail. Syncom is a debt collection firm in Houston, Texas.

## FACTUAL ALLEGATIONS

11.    Sometime after August 15, 2003, Plaintiffs received a debt collection letter. A copy of same is attached hereto as Exhibit "A".

12.    Shortly thereafter, Plaintiff began to receive phone calls at various hours of the day from Syncom and/or Triumph demanding payment of the debt, and informing Plaintiff that the Defendant Triumph was the lawful owner of a debt under a Retail Installment Contract, formerly owed to Ford Motor Credit Company, and which was purchased by Triumph. Syncom identified the original creditor in its debt collection letter as "Ford Credit" and the current owner as Triumph Asset Services. Plaintiffs informed Syncom and Triumph on the telephone between October 4, 2005 and August 18, 2006, that they owed no debt to Ford Motor Credit Company and disputed the debt's existence. Plaintiffs were informed orally by Syncom that Ford Motor Credit no longer was the "owner of the debt", but that Triumph was entitled to collect the debt.

13.    Plaintiffs disputed the debt orally and explained that the debt was released as the result of a lawsuit that concluded in 2003. Defendant Syncom informed Plaintiffs

3

that it was going to collect this debt and ignored Plaintiff's protestations, and threatened to ruin their credit.

14.     Defendant Syncom informed Plaintiff it would hire an attorney to collect the account and that litigation against the Krogulls and their assets would commence. Defendant Syncom represented to the Krogulls that it was collecting a debt owed to Triumph Asset Services and the original creditor was Ford Credit. A copy of this letter is attached hereto as Exhibit "A".

15.     In fact, the debt or alleged debt in question had been released by Ford Motor Credit Company with respect to the debt in question in a case entitled *Krogull v. Ford Motor Credit Company*, Case No. 01 L 7291. Ford Motor Credit Company appeared in that suit by its counsel, and a release was thereafter entered into on Ford Motor Credit's alleged debt and Ford Motor Credit paid the Krogulls $7,871.61. A copy of the Release is attached hereto as Exhibit "B".

16.     The Defendant Syncom and Triumph:

A.     falsely represented to the Krogulls that the Krogulls were indebted to Triumph;

B.     falsely represented it would file a lawsuit when it had no right to do so;

C.     falsely misrepresented that it would collect the debt from Plaintiff's assets.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AGAINST SYNCOM

4

17.    Plaintiffs restate, reallege and incorporate here by reference all foregoing paragraphs as if fully set forth in this Count.

18.    Defendant Syncom violated 15 U.S.C. §1692 e(2)(A) by falsely representing the character, amount or legal status of Plaintiff's alleged debt.

19.    Defendant Syncom violated 15 U.S.C. §1692(e)(4) by falsely representing that non-payment of the debt would result in a legal action against Plaintiff.

20.    Defendant violated 15 U.S.C. §1692(f) by using unfair means to attempt to collect an alleged consumer debt by failing to investigate Plaintiffs' claim that they were not indebted to Ford Motor Credit.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and against Defendant as follows:

(A) statutory damages;

(B) attorneys fees, litigation expenses and costs incurred in bringing this action;

(C) Any other relief the Court deems appropriate and just.

## COUNT II

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AGAINST FORD MOTOR CREDIT COMPANY

Now come the Plaintiffs, by their attorneys, Norman H. Lehrer, P.C., and by way of their Complaint against Defendant Ford Motor Credit Company, states and alleges as follows:

21.    David Krogull and Dian Krogull are individuals and citizens of the United States and State of Illinois.

22.    Ford Motor Credit Company is a corporation in the business of financing automobile purchases and leases among other things through a system of auto dealerships it engaged in business with.

5

23.    On April 17, 1998, the Plaintiffs, David Krogull and Dian Krogull, entered into a Retail Installment Contract with Woodfield Chevrolet, a car dealership in Schaumburg, Illinois, and Ford Motor Credit Company, relating to a 1989 Jeep Grand Cherokee. Litigation later ensued relative to the car in Cook County, Illinois, as case no. 01 L 7291. The Circuit Court of Cook County conducted a pretrial on the case, and the case against Ford Motor Credit was settled and Ford Credit released any claim for debt It had against the Krogulls on August 15, 2003.

24.    Ford Motor Credit Company had actual knowledge as of August 15, 2003 that it had no right to collect any funds from the Krogulls with respect to the Krogulls account relating to the 1989 Jeep Grand Cherokee. Ford Motor Credit had appeared in the Cook County litigation with the Krogulls and had actual knowledge as of August 15, 2003 that it had no right to collect any funds from the Krogulls with respect to the 1989 Jeep Grand Cherokee. Ford Motor Credit had appeared in the Cook County litigation with the Krogulls and had actual knowledge and notice Ford Motor Credit Company falsely misrepresented to Midland Funding LLC that Gros was in debt to Ford Motor Credit and knowing full well with reasonable certainty that Triumph would attempt to collect the debt from the Krogulls. This was an unfair and deceptive act by Ford Motor Credit Company. Ford Motor Credit Company sold a debt that it misrepresented to Triumph as valid and lawful, knowing that the debt was invalid and ruled invalid, and knowing that the misrepresentation of the debt as a lawful debt would be repeated, and a continuing misrepresentation by Triumph, who would attempt to collect the debt from the Plaintiffs. This was an unfair and deceptive act by Ford Motor Credit Company.

6

25.     At all times, there was in effect in the State of Illinois a statute known as the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2).

26.     Defendant Ford Motor Credit Company was at all times engaged in trade and commerce and knew Triumph would attempt to collect the debt.

27.     On information and belief, and as a continuing representation on or before 8-18-06, Ford Motor Credit Company, by its agents and employees, made the following continuing representations to Triumph Credit, LLC, knowing these representations would be repeated, and would cause collection efforts by Triumph and Syncom against the Krogulls:

    A.     That it was the lawful owner of an indebtedness of $3,812.18 that the Krogulls owed to it;

    B.     That it had the right to sell that debt to Triumph and Syncom;

    C.     Concealed that the Circuit Court of Cook County had released the debt by settlement agreement;.

    D.     Syncom and T riumph attempted repeatedly to collect the alleged debt from the Krogulls;

    E.     Ford Credit unfairly reported the alleged debt to various credit reporting agencies, damaging the Krogulls' credit;

    F.     Triumph initiated a lawsuit against the Krogulls on 8-18-06 in the Circuit Court of DuPage County as case no. 06 SC 4957, which was dismissed with prejudice (see Summons and Complaint attached as Exhibits "C" and "D").

28.     The above representations and/or omissions as set forth above were made with the intent that they would be relied upon.

7

29.     The above representations and/or omissions as set forth above were false and untrue, or Ford Motor Credit Company and Syncom and Triumph committed unfair acts and reckless acts when the representations were made as follows:

A.     The Circuit Court of Cook County had ruled that the Krogulls had no indebtedness to Ford Motor Credit Company by settlement in August, 2003;

B.     Ford Motor Credit Company had no right to collect the alleged debt, sell the alleged debt, or do anything else with the debt to prejudice the Krogulls, as the debt was ruled invalid and dismissed.

C.     The Krogulls had been found by the Circuit Court of Cook County not to be indebted to Ford Motor Credit Company and as such the sale of the debt to Triumph was a fraudulent concealment and an unlawful act.

D.     Neither Ford Credit nor Triumph nor Syncom had the right to collect the debt.

30.     Ford Motor Credit's and Triumph's acts are violations of public interest statutes, and misrepresentations and concealments in violation of the Illinois Consumer Fraud Act, and other laws, and have an impact on consumers generally, and have a potential for repetition. Ford Motor Credit has been engaged in a pattern of fraud in the financing of the lease and alleged debt with respect to the vehicle.

31.     The actions of Ford Motor Credit and Syncom and Triumph are injurious to the public and the Krogulls and part of a pattern of misconduct. The actions of Ford Motor Credit and Triumph and Syncom are one or more of the following:

A.     The sale of an invalid debt to a debt collector knowing it will be collected by the debt collector;

B.     The flagrant refusal to report or honor the lawful settlements, rulings and order of courts of law in the State of Illinois to the level of open contempt of the rulings;

C.     The continued mistreatment of a Ford Motor Credit customer;

32.     As a result of Defendant Ford Motor Credit's and Syncom's and/or

Triumph's fraudulent actions, the Defendant has caused the Plaintiffs damages and has

caused continuing attempts to collect, harass, and dun the Plaintiffs for money they do

not owe, and has caused out-of-pocket expenses, legal fees, loss of time, aggravation and

inconvenience and emotional distress, and these damages are continuing.

33.     The conduct set forth above constitutes unfair and deceptive conduct by

the Defendant in violation of the Illinois Consumer Fraud and Deceptive Business

Practices Act (815 ILCS 505/2).

WHEREFORE, the Plaintiffs pray for relief against the Defendants Ford Motor
Credit Company and Triumph and Syncom as follows:

A.     That Plaintiffs be awarded $50,000.00, plus costs, plus attorneys fees;

B.     That Plaintiff be awarded punitive damages of $100,000.00;

C.     For such other relief as the Court deems just.

## COUNT III

## COMMON LAW FRAUD AGAINST FORD MOTOR CREDIT COMPANY

Now come the Plaintiffs, by their attorneys, Norman H. Lehrer, P.C., and states as
follows by way of Complaint against Defendant Ford Motor Credit Company:

34.     Plaintiffs restate and reallege paragraphs 1-33 of Counts I and II, and

further states as follows:

35.     The misrepresentations and failures to disclose as set forth above were

made with the intent that Plaintiffs rely on them and Plaintiffs did in fact justifiably rely

on them to their detriment.

9

36.    As a result of misrepresentations and/or failures to disclose as set forth above, Plaintiffs have suffered damages and losses including out-of-pocket expenses, loss of time, damage to credit, and aggravation and inconvenience.

37.    Defendant's conduct as set forth above constitutes fraud against the Plaintiffs.

38.    The misrepresentations and/or failures to disclose set forth above were made willfully and intentionally or in reckless disregard of the truth of falsity of said misrepresentations and/or failures to disclose.

39.    The Krogulls discovered that Ford Credit had committed the acts of fraud, as set forth above, when the Krogulls were sued by Defendant Triumph on August 18, 2006, and shortly after that, the Krogulls discovered that the alleged claim that formed the basis for this lawsuit was the claim by Ford Motor Credit Company.

WHEREFORE, Plaintiffs pray for relief against Defendant Ford Motor Credit as follows:

A.    That Plaintiffs be awarded actual damages in the amount of $50,000.00;

B.    That Plaintiffs be awarded punitive damages in the amount of $300,000.00;

C.    That the Defendant be ordered to delete Plaintiffs' trade-line;

D.    For such other relief as the Court deems just and appropriate.

## COUNT IV

## COMMON LAW SLANDER OF CREDIT
## AGAINST FORD MOTOR CREDIT COMPANY

Now come the Plaintiffs, David Krogull and Dian Krogull, by their attorneys, Norman H. Lehrer, P.C., and states as follows:

40. Plaintiffs restate and reallege paragraphs 1-38 of Counts I, II and III as though fully set forth herein, and states further as follows:

41. On and before August 18, 2006, and on a continuing basis thereafter, Ford Motor Credit has intentionally and maliciously reported to Triumph Asset Services d/b/a Triumph Credit that Plaintiffs were indebted to it.

42. Plaintiffs' credit has been slandered and Plaintiffs have been caused to be dunned by Triumph by Ford Motor Credit's slander of Plaintiffs' credit.

43. The foregoing acts by Ford Motor Credit and Triumph were false, as Plaintiff had a clear right not to pay any debt to Ford Motor Credit or Triumph as the Court had released the debt, and the sale of the debt was in violation of Plaintiff's rights.

44. By the forgoing acts, Ford Motor Credit and Triumph intentionally made false statements about Plaintiff or made same in reckless disregard for the truth.

45. As a result of Defendants Ford Motor Credit's and Triumph's conduct, the Krogulls have suffered actual damages in that Plaintiffs' credit was damaged. Plaintiff has been caused aggravation and inconvenience and distress as a result of Ford Motor Credit's actions.

WHEREFORE, Plaintiffs request:

A. An award of actual damages which Plaintiffs have suffered, including punitive damages;

B. Award expenses of litigation;

C. An order that Defendant clear Plaintiffs' credit history with respect to this transaction in total;

D. Grant such other relief as the Court deems just.

11

## COUNT V

### CIVIL CONSPIRACY AGAINST TRIUMPH AND FORD CREDIT

Now come the Plaintiffs, by their attorneys, Norman H. Lehrer, P.C., and realleges paragraphs 1-44.

46.     At all times herein there was an agreement whereby Ford Motor Credit Company sold its purported debts allegedly owed by the Krogulls to Ford Motor Credit to Triumph Credit.

47.     At all times alleged herein, the efforts of Triumph Credit to collect the alleged debt from Plaintiffs Krogull was for an unlawful debt, as said debt was extinguished as a result of a settlement which occurred in the Cook County Circuit Court in the case entitled Krogull v. Ford Motor Credit Company.

48.     The actions of the Defendants were willful and intentional or in reckless disregard of the rights of the Krogulls.

49.     Triumph Credit acted in combination with or in concert with Ford Motor Credit to attempt to collect the unlawful debt and therefore engaged in a civil conspiracy.

50.     Based on the above, Defendant Ford Motor Credit Company conspired with Triumph Credit to collect the debt that did not exist and thereby participated in the unlawful harassment and collection efforts against the Krogulls by Triumph Credit. This action also violated the Illinois Consumer Fraud Act (815 ILCS 505/2), as Ford Motor Credit Company was aware that this debt was not valid when sold and had been declared judicially canceled and invalid by court order. Furthermore, Triumph failed to conduct a reasonable inquiry to determine the validity of the purported debt.

51.     Based on the foregoing acts, Defendant Ford Motor Credit participated in a scheme to defraud the Krogulls out of money and caused further damages to them,

including their credit rating, requiring them to pay higher interest on loans, and having to pay attorneys to attempt to clear their credit rating of this debt.

52.     The conduct described above has caused the Krogulls damages, cost of defense and legal fees in defending themselves against Triumph and Ford Credit, aggravation and inconvenience, mental distress, and other incidental and consequential damages and warrants the imposition of punitive damages to deter and punish such actions by the Defendants acting in concert.

53.     This conduct described above constitutes a continuous course of conduct and Ford Motor Credit Company engages in this as a pattern and practice of selling debts that are invalid, knowing that they are invalid and causing consumers to be needlessly harassed and to incur damage.  Such a pattern by Ford Motor Credit warrants the imposition of punitive damages to deter and punish such actions.

WHEREFORE, Plaintiffs pray for the following relief against Ford Motor Credit and Triumph as follows:

A.     That Plaintiffs be awarded actual damages of at least $25,000.00;

B.     That Plaintiffs be awarded punitive damages in the sum of at least $100,000.00 against each of the Defendants;

C.     That the Plaintiffs's attorneys be awarded legal fees and costs as provided and allowed by statute.

D.     Such other and further relief as the Court deems just and appropriate.

_____
One of Plaintiffs' Attorneys

Norman H. Lehrer, P.C.
429 W. Wesley
Wheaton, IL 60187
630-462-0700

13

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM GROS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 5510 |
| | ) | |
| MIDLAND CREDIT MANAGEMENT and | ) | |
| FORD MOTOR CREDIT COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff William Gros ("Gros") brings this lawsuit against defendants Midland Credit

Management, Inc. ("MCM") and Ford Motor Credit Company ("Ford Credit") for violations of

the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, the Illinois Consumer Fraud and

Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, *et seq.*, common law fraud,

common law slander of credit, and civil conspiracy.  Before the court is Ford Credit's Motion to

Dismiss Counts II, III, IV and V of Plaintiff's Amended Complaint, (Dkt. No. 40), which was

later joined by MCM as it pertains to the civil conspiracy claim.

For the reasons stated below, defendants' Motion to Dismiss is granted in part and denied

in part.  Defendants' Motion to Dismiss Count II is denied.  Defendants' Motion to Dismiss

Counts III, IV and V is granted.  Counts III and V are dismissed with prejudice; Count IV is

dismissed without prejudice.  Gros is granted leave to file a Second Amended Complaint on or

before September 25, 2007, consistent with this order, for purposes of pleading his actual

1

damages with specificity in regards to Count IV, should he choose to do so.

## PRELIMINARY MATTERS

At the outset of its analysis, the court addresses Gros' untimely filing of his responsive brief.  On March 13, 2007, the court set a briefing schedule on Ford Credit's motion to dismiss, according to which Gros' response was to be filed by April 17, 2007.  Without explanation, notice, or seeking leave of the court for an extension, or for leave to file instanter, Gros filed his responsive brief three days late, on April 20, 2007.  Because the court prefers to rule on the merits of a case, it will overlook Gros' procedural defect, finding no prejudice to the defendants at this point in the proceedings.  However, Gros is hereby put on notice that any further failure to timely file pleadings, briefs or other documents in this case, or to seek leave of the court for an extension of time in which to file, may result in such documents being stricken from the record.  Gros is further instructed that he must include references to specific page numbers when citing case law in future briefings before the court.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally need not contain more than "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In other words, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (May 21, 2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  So long as the factual allegations in the complaint "raise a right to relief above the speculative level," the complaint will withstand a 12(b)(6) challenge.  *Twombly*, 127 S. Ct. at 1965.  In conducting its analysis, the court assumes that all well-pleaded allegations in the complaint are true.  *Twombly*,

127 S. Ct. at 1965.  However, if a complaint includes facts that undermine its own allegations, a

plaintiff can plead himself out of court.  *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th

Cir. 2006).  Any exhibits attached to a complaint are considered to be a part of the pleadings.

*Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).

<u>BACKGROUND</u>

The court accepts as true the following facts, as alleged by Gros.  On January 4, 2002,

Gros entered into a "Red Carpet Lease End Extension Agreement" ("lease agreement") with

Westgate Lincoln Mercury, a car dealership in Lombard, Illinois, and Ford Credit.  The subject

matter of the lease agreement was a 1999 Lincoln Town Car.  When Ford Credit later refused to

sell the subject car to Gros at the stated contract price, Gros filed suit against both Westgate

Lincoln Mercury and Ford Credit in the Circuit Court of Cook County.[1]

Gros contends that the Circuit Court of Cook County ultimately found "that Ford Motor

Credit had no right to any additional funds from the plaintiff, William Gros, with respect to the

Red Carpet Lease Extension Agreement or in any manner with respect to the 1999 Lincoln Town

Car."  (Am. Compl. ¶ 23).  According to Gros, the court "ruled in favor of Gros and dismissed

Ford Motor Credit's counterclaim in the suit 'with prejudice' and ruled that Gros owed no

money to Ford Motor Credit Company."  (Am. Compl. ¶ 15).  In support of this argument, Gros

attaches an order from the Circuit Court stating:

> IT IS ORDERED HEREBY: that Ford Motor Credit Company's
> motion for set-off is granted in the amount of $35,000 judgment on

---

[1] The Amended Complaint states two different case numbers in connection with the state
lawsuit: 02 L 520 and 03 L 520.  Gros refers to the case as *Gros v. Ford Motor Credit Company,
et al*.

> Count III and in the amount of $10,000 judgment on Count I against
> the amount of settlement already paid by the other defendant, and It
> So [sic] Further Ordered that Ford Motor Credit Company's
> counterclaim is dismissed with prejudice and without costs *nunc pro
> tunc* September 20, 2005.

(Am. Compl., Ex. D).  The court order is dated July 27, 2006, and is identified as case number

03 L 000520.

Gros also attaches the 24-page trial transcript of witness Laurie Rizzo ("Rizzo"), Dealer

Service Supervisor for Ford Credit.  (Am. Compl., Ex. C).  Although Gros does not cite directly

to the transcript, it appears that Rizzo was the final witness in the Circuit Court case, with both

parties resting after her testimony.  (*See* Ex. C at 40-41).  At that point in the proceedings, the

transcript identifies an off-the-record discussion, in which the court apparently recognized the

defendant's right to voluntarily accept a dismissal with prejudice.  (*See* Ex. C at 42).  The

transcript does not indicate that the defendant actually asserted this right at that time.  The

transcript is dated September 20, 2005, and is identified as case number 02 L 520.

Gros alleges that, despite the court's ruling in his favor, Ford Credit nevertheless falsely

represented to Midland Funding, LLC (a/k/a/ MCM) that Gros owed money to Ford Credit and

sold the non-existent debt to MCM, knowing that MCM would attempt to collect the debt from

Gros.  MCM has, in fact, made various attempts to collect the debt from Gros.  These attempts

include two letters, dated May 26, 2006 and July 21, 2006, and multiple phone calls between

May 26, 2006 and July 21, 2006.  (Am. Compl. ¶¶ 11-14, Ex. A & Ex. B).

<u>Count I – Fair Debt Collection Practices Act</u>

4

Count I of the Amended Complaint is brought against MCM only, setting forth alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e)(2).  The motion before the court does not concern this count.

<u>Count II – Illinois Consumer Fraud and Deceptive Business Practices Act</u>

In Count II of his Amended Complaint, Gros alleges that Ford Credit and MCM violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 (the "Act").  Section 10a(a) of the Act creates a private cause of action for violations of the statute's provisions.  815 Ill. Comp. Stat. 505/10a(a).  "To prove a private cause of action under section 10a(a) of the Act, a plaintiff must establish:  (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."  *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005).

Ford Credit argues that the Act does not apply to the facts of this case, because the alleged misrepresentation necessarily took place outside of Illinois.  In support of this assertion, Ford Credit attaches the affidavit of Lynne Niepage ("Niepage"), Performance and Debt Sale Manager for Ford Credit, who attests that the sale of Gros' debt was negotiated between her office in Mesa, Arizona and a representative of Encore Capital Group (parent company to MCM) in San Diego, California.  (See Dkt. No. 41, Ex. A).  Ford Credit cites *Avery* for the proposition that the Act does not apply to fraudulent transactions which occur outside the state of Illinois. (Dkt. No. 41 at 4).

The court in *Avery* specifically found that "the General Assembly intended [a] broader

understanding of an in-state transaction," and held that the Act will apply whenever "the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 853-54. *Avery* instructs courts to consider the totality of the circumstances in determining whether the disputed transaction occurred "primarily and substantially" in Illinois. *Id.* at 854. It is therefore incorrect to focus on only one aspect of the disputed transaction. Ford Credit's argument discounts the importance of such factors as Gros' residence, the location of the alleged harm, the site of Gros' dealings with Ford Credit, the Illinois court case, and the site of Gros' communications with MCM — all of which are "circumstances relating to [the] disputed transaction." *Id.* Furthermore, because Niepage's affidavit goes beyond the scope of Gros' Amended Complaint, the court will not consider this evidence in addressing Ford Credit's Motion to Dismiss. *See Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002). At this point in the proceedings, based on the allegations in Gros' Amended Complaint, the court declines to find that the circumstances surrounding Gros' claim occurred primarily and substantially outside of Illinois.

Next, Ford Credit argues that Gros has failed to state a claim for relief under the Act because Gros admits that he was never deceived by any representation made by Ford Credit or any claims asserted by MCM. As stated by the Supreme Court of Illinois, "in a cause of action for fraudulent misrepresentation brought under the Consumer Fraud Act, a plaintiff must prove that he or she was actually deceived by the misrepresentation in order to establish the element of proximate causation." *Avery*, 835 N.E.2d at 861. In other words, "it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation." *Id.* (quoting *Oliveira v. Amoco Oil Co.*, 776

6

N.E.2d 151, 164 (Ill. 2002)).  Although indirect deception can occur, as would be the case if

misleading advertising deceived a builder, who in turn deceived a homeowner, *see Shannon v.*

*Boise Cascade Corp.,* 805 N.E.2d 213, 218 (Ill. 2004), it is still required that the plaintiff (the

homeowner, in this example) be deceived.  *Id.*

In this case, the Amended Complaint makes clear that Gros did not accept the false

assertion made to him by MCM that Gros was indebted to Ford Credit.  Rather, Gros alleges that

he repeatedly informed MCM "that he owed no debt to Ford Motor Credit Company and

disputed the debt's existence . . . explain[ing] that a court of law had found in his favor regarding

the debt in a lawsuit concluded in 2005."  (Am. Compl. ¶¶ 12-13).  Because Gros was not

deceived by MCM's misrepresentation, he cannot state a claim for fraudulent misrepresentation

under the Act.

However, recovery may also be had under the Act for conduct that is unfair.  *Robinson v.*

*Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002) (citing *Saunders v. Michigan Ave.*

*Nat'l Bank*, 662 N.E.2d 602 (Ill. App. Ct. 1996)).  In determining whether a defendant's conduct

should be deemed unfair, courts are to consider "the interpretations of the Federal Trade

Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission

Act."  805 Ill. Comp. Stat. 505/2.  The Federal Trade Commission, in turn, considers the

following factors relevant to the question of fairness: "(1) whether the practice offends public

policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it

causes substantial injury to consumers."  *Robinson*, 775 N.E.2d at 961 (citing *Federal Trade*

*Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972)) ("the *Robinson* factors").  The

Supreme Court of Illinois has explained that, "All three criteria do not need to be satisfied to

support a finding of unfairness.  A practice may be unfair because of the degree to which it meets

one of the criteria or because to a lesser extent it meets all three."  *Robinson*, 775 N.E.2d at 961

(quoting *Cheshire*, 612 A.2d 1130, 1143-44 (Conn. 1992)).

       In its Motion to Dismiss, Ford Credit mistakenly relies on *Saunders* for the proposition

that "all three elements must be present for a finding that the act is 'unfair.'" (Dkt. No. 41 at 6).

As discussed above, this is not the correct legal standard.  In fact, the Supreme Court of Illinois

specifically rejected this approach in *Robinson*.  775 N.E.2d at 961 ("Although the holding in

*Saunders* seems to suggest that all three prongs of the *Sperry* test must be met, that is not an

accurate statement of plaintiffs' burden.").  Ford Credit argues that, because Gros "does not and

cannot claim that either Ford Credit's or MCM's conduct was so oppressive at [sic] to force him

into submission.," Gros cannot state a claim for unfair conduct under the Act.  (Dkt. No. 41 at 6-

7) (citing *Saunders*, 662 N.E.2d at 608-09).  Because Ford Credit fails to address the fairness of

its conduct in light of the other two *Robinson* factors, Ford Credit's Motion to Dismiss Count II

on these grounds is denied.

       Because Ford Credit has not shown that the conduct complained of occurred primarily

and substantially outside of Illinois or that it was not "unfair," Ford Credit's Motion to Dismiss

Count II is denied.

Count III – Common Law Fraud

       In Count III of his Amended Complaint, Gros contends that the actions of Ford Credit

constitute common law fraud under Illinois law.  In order to state a valid cause of action for

common law fraud, Gros must ultimately prove "(1) a false statement of material fact; (2) the

defendant's knowledge that the statement was false; (3) the defendant's intent that the statement

8

induce the plaintiff to act; (4) the plaintiff's reliance on the statement; and (5) the plaintiff's

damages resulting from reliance on the statement." *Suburban 1, Inc. v. GHS Mortgage, LLC*,

833 N.E.2d 18, 21 (Ill. App. Ct. 2005). As discussed above, the Amended Complaint makes

clear that Gros did not rely on or otherwise accept Ford Credit's (or MCM's) false assertion that

Gros was indebted to Ford Credit. Because Gros did not rely on the alleged false statement, he

cannot assert a cause of action for common law fraud. Count III is therefore dismissed with

prejudice.

Count IV – Common Law Slander of Credit

In Count IV of his Amended Complaint, Gros alleges that both MCM and Ford Credit

committed common law slander of credit by reporting his non-existent debt to various credit

reporting agencies. Under Illinois law, plaintiffs asserting defamation claims may proceed on a

theory of defamation *per se* (if the harm caused by the defendant's statement is so obvious that

damages may be presumed) or defamation *per quod* (if extrinsic facts are needed to prove the

defamatory nature of the defendant's statement). *Muzikowski v. Paramount Pictures Corp.*, 322

F.3d 918, 924 (7th Cir. 2003). Defamation *per se* is limited to statements regarding "(1)

commission of a criminal offense; (2) infection with a venereal disease; (3) inability to perform

or want of integrity in the discharge of duties of public office; (4) fornication or adultery; or (5)

words that prejudice a party in her trade, profession, or business." *Id.* at 924. Statements

impugning an individual's creditworthiness constitute defamation *per quod*. *See Dornhecker v.*

*Ameritech*, 99 F. Supp. 2d 918, 933 (N.D. Ill. 2000) (noting "the defamatory character of the

statement is not apparent on its face," where defendant allegedly published false statements

about plaintiffs' credit history to collection agencies and credit reporting agencies).

In order to allege an action for defamation *per quod* in federal court, Gros must plead actual damages in accordance with Illinois law and Federal Rule of Civil Procedure 9(g). *Muzikowski*, 322 at 924. In this case, Gros has alleged that he has suffered "out-of pocket expenses, loss of time, aggravation and inconvenience and emotional distress" as well as suffering "actual damages in that Plaintiff's credit was damaged [and] Plaintiff has been caused aggravation and inconvenience and distress as a result of Ford Motor Credit's and MCM's actions." (Am. Compl. ¶¶ 32, 44). Such general allegations are not sufficient to satisfy the special pleading requirements of Illinois law pertaining to claims of defamation *per quod*. "Under Illinois law, a plaintiff asserting a *per quod* defamation claim must not only plead special damages, he must set forth extrinsic facts to satisfy the *per quod* action." *Dornhecker*, 99 F. Supp. 2d at 933 (citing *Taradash v. Adelet/Scott-Fetzer Co.*, 628 N.E.2d 884, 888 (Ill. App. Ct. 1993)). As in *Dornhecker*, Gros "never alleges any *facts* suggesting that his reputation for creditworthiness was impaired, or that he applied for and was denied credit." *Id.* (emphasis added).

Gros directs the court to *Bruck v. Cincotta*, 371 N.E.2d 874 (Ill. App. Ct. 1977), in support of his claim that "it is enough to allege distress and out-of-pocket loss." (Dkt. No. 44 at 8). However, the court in *Bruck* specifically noted that general allegations of injury to reputation, substantial economic loss, ill health, emotional distress, loss of business profits, or loss of clientele have each been found insufficient to support allegations of actual damages. *Bruck*, 371 N.E.2d at 879-80. In *Bruck*, the allegations that "(P)laintiffs have been greatly injured in their credit and reputation, and certain business associates have stopped doing business with plaintiff for a period of time, and prospect of [sic] purchasers of buildings from the

10

plaintiff have been unwilling to do business with plaintiff and will be so induced in the future"
were found insufficient to support special damages. *Id.* at 880. Gros' allegations likewise suffer
from a lack of specificity and do not sufficiently support his claim of defamation *per quod*.

Gros informs the court that he is in a position to supply further details of his actual
damages, if needed. (Dkt. No. 44 at 9). Although Gros was already afforded an opportunity to
file an Amended Complaint at a time when he was on notice of Ford Credit's argument, Gros did
not have the benefit of the court's ruling at that time. The court therefore dismisses Count IV
without prejudice and grants Gros leave to file a Second Amended Complaint for purposes of
pleading his actual damages with specificity, should he choose to do so. Gros' Second Amended
Complaint is to be filed on or before September 25, 2007, consistent with this order.

<u>Count V – Civil Conspiracy</u>

Finally, in Count V of his Amended Complaint, Gros alleges that both defendants
engaged in civil conspiracy, in that Ford Credit conspired with MCM "to collect the debt that did
not exist and thereby participated in the unlawful harassment and collection efforts against
William Gros." (Am. Compl. ¶ 49).

To state a claim for civil conspiracy under Illinois law, a plaintiff must allege (1) an
agreement for the purposes of accomplishing either an unlawful purpose or a lawful purpose by
unlawful means; and (2) at least one tortious act committed by one of the co-conspirators in
furtherance of the agreement. *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258
(Ill. 1999). While a conspiracy claim by itself "is not something that Rule 9(b) of the Federal
Rules of Civil Procedure requires be proved with particularity," *Loubser v. Thacker*, 440 F.3d
439, 442 (7th Cir. 2006), a conspiracy claim will be subject to Rule 9(b)'s heightened pleading

requirements if the conspiracy is "premised upon a course of fraudulent conduct." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Ford Credit relies upon *Borsellino* in arguing that Gros has failed to plead Count V with sufficient particularity under Federal Rule of Civil Procedure 9(b).[2]

In *Borsellino*, the Seventh Circuit held that the pleading requirements of Rule 9(b) applied to the plaintiffs' claim for civil conspiracy because the purpose of the alleged conspiracy was "to commit the fraud" and the plaintiffs' theory of fraud "pervades their entire case." *Id.* However, the court also specifically noted that "whether [Rule 9(b)] applies will depend on the plaintiffs' factual allegations." *Id.* In this case, the only agreement alleged by Gros is "there was an agreement whereby Ford Motor Credit Company sold its purported debts allegedly owed by William Gros to Ford Motor Credit to Midland Credit Management." (Am. Compl. ¶ 45). Of note, Gros does *not* allege that MCM knew the debt was not actually owed by Gros,[3] nor does Gros allege that Ford Credit and MCM conspired together to defraud him. Because the underlying agreement is not premised on fraudulent conduct, the heightened pleading requirements of Rule 9(b) do not apply to Count V.

---

[2] Ford Credit argues that *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), "makes clear the heightened pleading requirement to satisfy Fed.R.Civ.Pro. 9(b)." (Dkt. No. 50 ¶ 4). This court disagrees, as the *Twombly* Court specifically noted that it was not applying a heightened pleading standard to the plaintiffs' claims in that case. *Twombly*, 127 S. Ct. at 1973, n.14. To the extent that *Twombly* redefined the pleading requirements of Rule 8(a)(2), this court has incorporated these changes in its statement of legal standards applicable to a motion to dismiss.

[3] In his Response, Gros contends that he has alleged "that both Defendants know that their acts were unlawful, as the debt was deemed invalid by the Circuit Court of DuPage County." (Dkt. No. 44 at 9). Gros cites to paragraph 46 of his Amended Complaint in support of this contention, but paragraph 46 does not allege that MCM had any knowledge of the Circuit Court's ruling. (Am. Compl. ¶ 46).

Under Federal Rule of Civil Procedure 8(a)(2), Gros need only set forth "a short and plain statement of the claim showing that [he] is entitled to relief." In other words, the allegations "must plausibly suggest that the plaintiff has a right to relief." *E.E.O.C. v. Concentra Health Services, Inc.*, No. 06-3436, 2007 WL 2215764, at *2 (7th Cir. Aug. 3, 2007) (citing *Twombly*, 127 S. Ct. at 1973, n.14). However, relief may be denied and a claim dismissed if a plaintiff has plead himself out of court, such that "it would be necessary to contradict the complaint in order to prevail on the merits" of the asserted claim. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006). That is the case here. Civil conspiracy requires an agreement "for the purposes of accomplishing either an unlawful purpose or a lawful purpose by unlawful means." *McClure*, 720 N.E.2d at 258. As noted above, Gros does not allege that MCM knew that the debt it sought to collect was not actually owed by Gros. In fact, Gros alleges that Ford Credit (1) falsely represented to Midland Funding, LLC that Gros was in debt to Ford Credit, and (2) fraudulently concealed the Circuit Court's ruling from Midland Funding, LLC. (Am. Compl. ¶¶ 24, 27(C)). "Civil conspiracy is an intentional tort and requires proof that a defendant 'knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.'" *McClure*, 720 N.E.2d at 258 (citing *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888 (1994)). According to the factual allegations of Gros' Amended Complaint, MCM could not have knowingly participated in a scheme to collect an unlawful debt, as the debt's unlawful nature was hidden from MCM. Count V is thus dismissed with prejudice for failure to state a claim for civil conspiracy under Illinois law.

Specificity of the Fraud Allegations

13

In the interest of completeness, the court notes that the parties have also briefed the question of whether Counts II and III were plead with the necessary particularity to satisfy Rule 9(b).[4] It is by now well-settled that a complaint alleging fraud must provide "the who, what, when, where, and how" of the alleged fraudulent action, so as to avoid "the great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d at 507 (citations omitted). "A complaint alleging a violation of the Illinois Fraud Act must be pled with the same particularity and specificity as that required under common law fraud under Rule 9(b)." *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 731 (N.D. Ill. 2005) (citations omitted).

In this case, the court finds that Gros has sufficiently alleged detailed factual allegations regarding Ford Credit's alleged fraud, so as to satisfy the pleading requirements of Rule 9(b). Gros alleges "who" — "Ford Motor Credit Company . . . its agents and employees" (Am. Compl. ¶ 27); "what" — made continuing misrepresentations and omissions of fact when selling Gros' purported debt to MCM (Am. Compl. ¶¶ 27(A)-(C)); and "when" — "on or before 5-26-05" (Am. Compl. ¶ 27) (presumably Gros meant 5-26-06, the date that MCM sent its first dunning letter). As in *Barr Co. v. Safeco Ins. Co. of Am.*, "defendants are not left guessing as to the outlines of the fraud, its purposes, or the critical facts which are purportedly misrepresentations." *Barr Co. v. Safeco Ins. Co. of Am.*, 583 F. Supp. 248, 259 (N.D. Ill. 1984) (citing *Adair v. Hunt Int'l Resources Corp.*, 526 F. Supp. 736, 744 (N.D. Ill. 1981)). The court thus declines to dismiss Count II of the Amended Complaint on the grounds that it was not plead

---

[4] This, despite Ford Credit's initial acknowledgment that it "did not raise the issue of F.R.Civ.P. 9(b) in the motion to dismiss Counts II and III of the Complaint." (Dkt. No. 41 at 10, n.2).

with sufficient particularity.

<u>CONCLUSION</u>

For the reasons stated above, defendants' Motion to Dismiss, (Dkt. No. 40), is granted in part and denied in part. Defendants' Motion to Dismiss Count II is denied. Defendants' Motion to Dismiss Counts III, IV and V is granted. Counts III and V are dismissed with prejudice; Count IV is dismissed without prejudice. Gros is granted leave to file a Second Amended Complaint on or before September 25, 2007, consistent with this order, for purposes of pleading his actual damages with specificity in regards to Count IV, should he choose to do so.

ENTER:

James F. Holderman

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: September 10, 2007

15

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney, certify that on February 14, 2008 I electronically filed the

foregoing **Memorandum of Law in Support of Motion to Dismiss** with the Clerk of the Court

using the CM/ECF system, which sent notification of such filing to the following:

Norman H. Lehrer,                          William George Hutul
normanhlehrer@yahoo.com                    normanhlehrer@yahoo.com
429 Wesley                                 429 Wesley
Wheaton, IL 60187                          Wheaton, IL 60187
630.462-0700                               630.462-0700
630.462-0838                               630.462-0838


                                 ____/s/ Mary K. Schulz_____
                                     Mary K. Schulz

9